**UNITED STATES of America, Appellee**

v.

**William D. POYNTER, Appellant.**

Nos. 08–3006, 09–3018.

United States Court of Appeals, District of Columbia Circuit.

April 26, 2013.

Roy W. McLeese, III, Esquire, Assistant U.S. Attorney, U.S. Attorney's Office, Washington, DC, for Appellee.

Carrie Crawford, Crawford & Associates, Laurel, MD, for Appellant.

William D. Poynter, Washington, DC, pro se.

Before: HENDERSON and BROWN, Circuit Judges, and GINSBURG, Senior Circuit Judge.

### JUDGMENT

PER CURIAM.

This appeal was considered upon the record from the district court and upon the briefs and oral arguments of the parties. Although the issues presented occasion no need for a published opinion, they have been accorded full consideration by the Court. *See* Fed. R.App. P. 36; D.C.Cir. Rule 36(d). For the reasons explained in the accompanying memorandum, it is

**ORDERED** and **ADJUDGED** that the judgment of the district court be affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

### MEMORANDUM

William Poynter appeals his conviction for conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). Poynter also appeals the denial of his post-verdict motion for a new trial.

Poynter argues he received ineffective assistance of counsel because his trial attorney (1) allowed the Government to introduce into evidence hearsay "allegations that Mr. Poynter had previously engaged

in money laundering;" (2) accepted a prospective witness's invocation of the Fifth Amendment privilege against compelled self-incrimination even though the witness had "waived whatever protectable Fifth Amendment right he retained after his plea;" (3) failed to "place into evidence several out-of-court statements bearing on ... Mr. Poynter's state of mind;" and (4) failed to argue "reasonable doubt that a conspiracy existed at all or—if there was a conspiracy—that Mr. Poynter intended to join it."

In order to succeed upon a claim of ineffective assistance of counsel a defendant must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Because a defendant must show both deficient performance and prejudice, a court may reverse the order of inquiry: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052.

We follow that course here. Even if his attorney's performance was deficient in all the ways claimed, Poynter suffered no prejudice because there is no reasonable probability that, but for the alleged errors, the outcome of the trial would have been different.

At trial the Government presented overwhelming evidence of a money-laundering conspiracy among Poynter, James Franklin Smith, and Christopher Cook. Much of this evidence was in the form of audio and video recordings of Poynter himself. In one video, for example, an undercover agent hands Poynter an envelope stuffed with cash, stating: "Your cut." Smith takes the envelope, removes a bill, and then hands the bill to Poynter. The informant explained at trial: "Frank [Smith] had actually given him $100 out of the envelope, and Mr. Poynter put it in his top pocket of his shirt." In another recording Poynter advises the informant that "[w]hat Chris is talking about was actually pretty good idea. You go with him.... He go around different post offices, get postal money orders." Two months later Cook converted approximately $5,000 of purported drug money into postal money orders.

These examples give but a flavor of the evidence presented by the Government. Taken in context, the recordings alone show Poynter conspired to launder money; the recordings were further corroborated by the testimony of the informant and of the case agents. Had Poynter's counsel moved to suppress the allegations of prior money laundering, put Smith on the witness stand, introduced evidence of Poynter's fearful state of mind, and argued reasonable doubt about the existence of a conspiracy and Poynter's participation in it, "the strength of the [G]overnment's evidence ... would remain virtually unchanged." *United States v. Weaver*, 234 F.3d 42, 48 (D.C.Cir.2000).

Poynter raises a number of other arguments in his supplemental pro se brief. We have reviewed those arguments and found them wholly without merit. We therefore affirm the judgment of the district court and its denial of Poynter's motion for a new trial.